P. "Mike" Palmer
18402 N. 19th Avenue, #109
Phoenix, AZ 85023
602-513-3738 (cell)
Pro Se

FILED _____  LODGED _____
_____ RECEIVED  _____ COPY

NOV 21 2012

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ P DEPUTY

## IN THE UNITED STATES DISTRICT COURT

## IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Peter Michael Palmer, an individual | CV-10-8209-PCT |
| Plaintiff, | |
| vs. | ZEROTH* AMENDED COMPLAINT |
| Glenn A. Savona, individually and in his official capacity as Prescott City Prosecutor & Jane Doe Savona, husband & wife; Dan Murray individually and in his official capacity as City of Prescott police department employee & Jane Doe Murray, husband & wife; Christine Keller, individually and in her official capacity as City of Prescott department employee & Joseph Keller, wife & husband; Melody Thomas-Morgan (f.k.a. Melody Bodine), an individual; Mark M. Moore & Jane Doe Moore, husband & wife; City of Prescott, an Arizona municipal corporation; and John & Jane Does I-X | (Title 42 §§ 1983, 1985, 1986) |
| | Request Jury Trial |
| | (*AMENDED BEFORE SERVICE) |
| Defendants. | |

### NOTICE TO THE COURT

In the interest of judicial economy—in the spirit of, but not quite pursuant to Fed.R.Civ.P. 15(a)(1)—pro se plaintiff amends his complaint of two years ago before service today. Since no parties have been served and (therefore) since the complaint is not before the court, this expediency cannot harm any party or the court by amending

1  prior to service. (Rule 15(a)(2) not being applicable in this instance, the 21-day clock
2  not having started.)

3       Yet by doing so, plaintiff reserves his right to amend within 21 days as a matter of
4  right, per Rule 15(a)(1).

5

---

6  ## INTRODUCTION

7  1.    This is an action for money damages (to be directed by the court to the charities
8       of my choice) and declaratory relief pursuant to 42 U.S.C. §§ 1983, 1985(3),
9       1986 & 1988; the Second and Fourteenth Amendment to the United States
10      Constitution; and the laws of the State of Arizona against the Defendants named
11      herein in their individual and official capacities.

12 2.    This action arises from a patently ridiculous misdemeanor charge of "criminal
13      faxing." (More technically, a criminal charge of "Interfering with judicial
14      proceedings" for ostensibly not complying with a Rule of Civil Procedure, not
15      obtaining permission to serve legal papers via fax.) It's a convoluted charge, but
16      the trial judge saw through it and rejected the theory in a pretrial ruling. The
17      charge was dismissed (terminated in favor of plaintiff) days before trial on
18      motion from the prosecutor in "the best interest of justice."

19 3.    This is a clear case of malicious prosecution and abuse of process. The
20      defendant prosecutor stated in evidence he withheld that he knew he did not
21      have probable cause to bring charges. The other defendants, by intentionally
22      initiating a prosecutor to bring an unfounded action against plaintiff, conspired
23      serially in concert against plaintiff with the intent, and the ultimate effect, of
24      depriving plaintiff of his Fourteenth Amendment right. Because the private
25      party defendants willfully participated in joint action with the State or its agents
26      to deprive plaintiff of his constitutional rights, liability attaches to them.

27
28

JURISDICTION AND VENUE

4.     Subject matter jurisdiction is proper pursuant to 28 U.S.C. §§ 1331, 1343 & 1367 and pursuant to the Declaratory Judgement Act, 28 U.S.C. §§ 2201 and 2202. This Court has supplemental jurisdiction over plaintiff's causes of action arising under Arizona state law pursuant to 28 U.S.C. § 1367.

5.     Pursuant to 28 U.S.C. § 1391, venue is proper in this Court.

PARTIES

6.     Plaintiff PETER MICHAEL PALMER ("I" or "Plaintiff") is a naturally born citizen of the United States, at all times relevant resides in Maricopa County, Arizona.

7.     But first and foremost, plaintiff is one of those somewhat zealous Bible-thumping, outspoken 'born again' Christians[1] which, as history demonstrates, the world loves to hate. This goes to class-based, invidiously discriminatory animus toward me by the various defendants. (Or alternatively, I am a "class of one.")

8.     Defendants GLENN A. SAVONA ("Mr. Savona") and JANE DOE SAVONA are, at all times relevant, husband and wife residing in Yavapai County, Arizona. At all times relevant, Defendant Glenn Savona held the position of Prescott City Prosecutor. Mr. Savona is a criminal prosecutor. Part of his job is to determine whether there is probable cause to initiate a criminal proceeding against citizens, ultimately with the goal of obtaining equal Justice for all. Mr. Savona is the final arbiter for the City of Prescott on whether to initiate criminal proceedings or not.

9.     Further, he is the one who writes the complaint for the Prescott Police/Attorney Liaison (Defendant Keller) to swear to. Even though she swears before a judge that what she's saying is true, she relies on Mr. Savona's word that what he's told her is true. (And/or that he's told her the whole truth.) As such, Mrs. Keller has

---

[1] "Jesus declared, 'I tell you the truth, no one can see the kingdom of God unless he is born again.'" John 3:3

Page 3 of 25

abdicated her responsibility to cross check Mr. Savona's veracity. In essence, she is just Mr. Savona's rubber stamp. As such, without any check and balance, Mr. Savona is the final policy making authority when it comes to initiating criminal complaints brought before him.

10. Mr. Savona is a member of the Arizona State Bar, license No. 001969. As such, he swore an oath to support both the U.S. and Arizona constitutions, as well as to obey Arizona Supreme Court Rule 81, a.k.a. the Ethics Rules. ("E.R.")[2] All actions taken by Defendant Glenn Savona were on behalf of the marital community.

11. I have never spoken with Mr. Savona. However, based on his actions against me as detailed in this Complaint, it's clear he harbors animus toward me.

12. As an aside, it should be said that Mr. Savona's colleague, Mr. Thomas Lloyd is now (falsely) claiming defendant Miss Thomas-Morgan as his "client" as grounds for redacting incriminating evidence discovered in a record request.

13. Defendants DAN MURRAY ("Mr. Murray") and JANE DOE MURRAY are, at all times relevant, husband and wife residing in Yavapai County, Arizona. Mr. Murray is a civilian employee in the Prescott Police Department. That is, he is not a sworn police officer, not an AZ POST (Peace Officer Standards &

---

[2] Specifically Mr. Savona swore an oath, presumably to God, that (in part) "I do solemnly swear that I will support the Constitution of the United States and the Constitution of the State of Arizona; I will maintain the respect due to courts of justice and judicial officers; I will not counsel or maintain any suit or proceeding that shall appear to me to be without merit or to be unjust; I will employ for the purpose of maintaining the causes confided to me such means only as are consistent with truth and honor; I will never seek to mislead the judge or jury by any misstatement or false statement of fact or law; I will abstain from all offensive conduct; I will not advance any fact prejudicial to the honor or reputation of a party or witness, unless required by the justice of the cause with which I am charged; I will never reject, from any consideration personal to myself, the cause of the defenseless or oppressed, nor will I delay any person's cause for greed or malice; I will at all times faithfully and diligently adhere to the rules of professional responsibility and a lawyer's creed of professionalism of the State Bar of Arizona."

1  Training) certificated peace officer. As such, he is not under oath.

2 14. During the time relevant Mr. Murray was assigned by the Prescott Police

3   Department to be Defendant Thomas-Morgan's personal liaison "officer."[3]

4   (Despite there being no law in Arizona calling for this special service for

5   women, nor any AZ POST policy about it.[4]) Even Miss Thomas-Morgan's

6   minor children (over which she was given sole custody after she left her

7   husband) have had Mr. Murray's phone number stored in their cell phones'

8   speed dial. As such, complaints by women have been given special status within

9   the Prescott Police Department. Which implies reverse discrimination against

10  those of use who are not women. All actions taken by Defendant Murray were

11  on behalf of the marital couple.

12 15. I have never met defendant Murray. Despite that, he recently wrote in an email

13   to defendant Thomas-Morgan "I hope he [Plaintiff] crawls in a hole." He has

14   been writing police reports on behalf of defendant Thomas-Morgan for about

15   three years now, pretty much reporting what she tells him as gospel and

16   consistently misrepresenting material facts against me. (He also consistently

17   misreports facts against Thomas-Morgan's ex-husband, also an outspoken

18   Christian.)

19 16. Defendants CHRISTINE KELLER ("Mrs. Keller") and JOSEPH KELLER are,

20   at all times relevant, wife and husband residing in Yavapai County, Arizona.

21   Mrs. Keller was, during the time relevant, a civilian employee in the Prescott

22   Police Department. She acted as Liaison between Detectives and the County

23 ———————————————

24   [3] To this day, Miss Thomas-Morgan has unfettered access to Mr. Murray in the
P.D., even though Miss Thomas-Morgan does not have any criminal Orders of
25 Protection in place.

26

27   [4] However, the federal government, through its Violence Against Women Act
(VAWA), promotes this preferential treatment, liberally handing out grants to agencies
28 willing to promote its agenda. Even our own Arizona Supreme Court is not immune
and has taken grants from VAWA funds.

1   Attorney. As such, it was often her job to personally appear before judges on

2   behalf of prosecutors and personally swear out criminal Complaints

3   (presumably before God) that it was her belief that certain citizens had

4   committed certain crimes. On information and belief, her information and belief

5   came solely from the prosecutors.

6   17.   Defendant Miss Melody Thomas-Morgan, formerly known as Mrs. Melody

7   Bodine ("Miss Thomas-Morgan" or "Mrs. Bodine"), during the time relevant

8   (and continuing) is a divorced woman, a private individual. Before, during and

9   after the time relevant, Mrs. Bodine/Miss Thomas-Morgan would run, and

10   continues to run to Mr. Murray at the Prescott police for "help" and legal advice

11   about how to deprive me of various Constitutional rights. (First, Second, Fourth

12   and Fourteenth Amendment.)

13   18.   Before she left her husband, defendant Thomas-Morgan and I were

14   acquaintances for ten years or so. I house-churched with their family and

15   sometimes overnight before worship. Their oldest son evangelized with me one

16   evening. But ever since she initiated divorce proceedings against her husband (a

17   sin, according the God of the Bible), she has hated me. To wit, after I attended

18   their first divorce hearing, she sent me a card telling me to "mind my own

19   business." She has never wanted me around the children when her husband had

20   visitation, even pre-divorce. In the time frame of this Complaint, she looked

21   directly at me from the witness stand in court and mouthed the words "F***

22   You!" to me twice in quick succession.

23   19.   Defendants Mark M. Moore and Jane Doe Moore are, at all times relevant, wife

24   and husband residing in Yavapai County, Arizona. During the time relevant,

25   Mr. Moore was Mrs. Bodine's divorce attorney and Mrs. Bodine retained him

26   strictly for her divorce. Mr. Moore is a licensed attorney, Bar No. 004346 who

27   focuses on "Administrative Law, Family/Domestic Relations, Probate & Trust

28   Law." (I.e., civil, not criminal law.) Mr. Moore has sworn the same oath as Mr.

1    Savona, and is similarly obligated by the E.R.'s as to honesty, integrity, etc.

2    20.   I have never spoken with defendant Mark Moore. But early on, when he took

3          over defendant Thomas-Morgan's divorce trial, I sent him a Christmas card. I

4          told him I was concerned for his soul. That while he might win the instant

5          lawsuit, "what does it profit a man if he gains the whole world but forfeits his

6          soul?" (Mark 8:36 in the Bible.) The only encounter I've had with Mr. Moore

7          was a creepy one in a courthouse lav. He has heard me singing hymns to myself

8          before his client's trials and I have observed he has a visceral hatred for sound

9          Christian principles. (If not sound Christians proper.)

10   21.   Recently Mr. Moore sent Miss Thomas-Morgan an email from her ex-husband

11         that had been sent to him in error by Miss Thomas-Morgan's ex-husband. A

12         printout of that email appeared in a Prescott P.D. public record request for Miss

13         Thomas-Morgan. It's as if they're keeping a dossier on Mr. Bodine and me.

14   22.   Defendant CITY OF PRESCOTT is, at all times relevant, an Arizona municipal

15         corporation, located in Yavapai County, Arizona. At all times relevant, the City

16         employed defendants Glenn Savano, Dan Murray and Christine Keller.

17   23.    Defendants, JOHN and JANE DOES I-X are, at all times relevant, husband and

18         wife residing in Yavapai County, Arizona. Plaintiff will seek leave of the Court

19         to add their true names once their identity has become known.

20                            **GENERAL ALLEGATIONS**

21                              IN THE BEGINNING

22   24.   On January 23, 2009, I was served with an ex parte temporary Injunction

23         Against Harassment by defendant Miss Thomas-Morgan. This despite the fact

24         that I reside in Phoenix and she in Prescott.[5] This was after her divorce was final

25

26   _____

27        [5] Arizona's ex parte civil injunction statute is arguably unconstitutional as it
     specifically declines to comport with the constitutional safeguards in Fed.R.Civ.P. 65.
28   As such, it arguably violates the Fourteenth Amendment, since it is devoid of due
     process.

1    but before she changed her name from Mrs. Bodine.

2    25.    Since I had not had any contact with Mrs. Bodine in the years since she first

3           filed papers against her husband (as Mrs. Bodine acknowledged later in court),

4           there was no cause for an injunction against me. The ex parte injunction also

5           interfered with Mr. Bodine's parental rights by dictating to him that I could not

6           be around his children on his visitation day.[6] Mr. Bodine wanted me to

7           challenge this. So I filed papers as a pro se for a challenge hearing in the

8           Prescott "Justice" Court.

9    26.    While Mrs. Bodine had a divorce lawyer at the time (defendant Moore), she was

10          ostensibly representing herself in the injunction. (Curiously, though, her

11          pleadings were more conforming than mine.)

12   27.    Before trial I filed many motions. Acting as my own attorney, I mailed copies of

13          all motions and paperwork to Mrs. Bodine as required by Rule 5(a) of the

14          Arizona Rules of Civil Procedure (binding on Justice Courts per A.R.S. § 22-

15          211). The Injunction paperwork clearly allowed contact "through attorneys" or

16          "legal process." (The latter which I didn't know at the time is a term of art. I

17          took it literally to mean "anything involving the process of litigating.") Further,

18          A.R.S. § 12-1809 (which governs harassment law) defines harassment as an act

19          which serves "no legitimate purpose." Clearly, sending your opponent court

20          paperwork is a legitimate act. And common sense.

21   28.    Even though there was a residence address listed for Mrs. Bodine in the

22          Injunction, I couldn't be sure it was still valid. For Mrs. Bodine had shocked us

23          in divorce court when we learned serendipitously on cross that Mrs. Bodine had

24          recently vacated her primary residence without telling anyone. (But still having

25          Mr. Bodine drop the children off to an empty house.) Given her erratic

26          behavior, and not sure where she really resided, I thought it best to send all legal

27

28          [6] Thus, by modifying a parental right, the injunction violated the Arizona Rules
     of Protective Order Procedure.

1    paperwork in care of the First Baptist Church of Prescott. That church group

2    was supporting her in her sin and had given her a job. I was careful to write

3    "Legal Process Exclusion" on the front of the large manilla envelopes to avoid

4    any problems.

5                                    THE FAX

6    29.   Having seen real attorneys fax each other motions in addition to mailing them, it

7          was my belief that I was also required to fax Emergency Motions to Mrs.

8          Bodine so she could have ample notice to respond. Even if faxing an

9          Emergency Motion wasn't required, it seemed to me to be a courtesy, buying her

10         a day or two to contemplate a response. But I wanted to check with my legal

11         adviser first.

12   30.   See, when Mrs. Bodine had filed divorce papers against her husband, she also

13         obtained an ex parte criminal Order of Protection against him. (A tactic I've

14         since learned divorcing women often deploy.) In her emails to Mr. Bodine, Mrs.

15         Bodine frequently referred to "her friends in the Prescott Police Department."

16         She routinely used the OOP to bully her husband, calling the police on him at

17         the drop of the hat for bogus causes. (That they were all bogus calls for service

18         is evidenced by the fact he was never arrested or charged with violating the

19         OOP. Which would have been very serious.) Given her history of malicious

20         prosecution of her husband, I was concerned Mrs. Bodine would similarly

21         contact the police claiming I violated the ex parte injunction if I sent her the

22         required fax.

23   31.   So, to make doubly sure I wasn't violating the injunction, I contacted an attorney

24         I've consulted with before, so I could know best how to proceed. (In fact I had

25         consulted with him in January when I was served the Injunction.) I explained to

26         him that I thought it was a requirement to fax an emergency motion.

27         (Interestingly, he didn't tell me it wasn't. But he's a criminal attorney, not a

28         civil.) I explained my fear that Mrs. Bodine would run to the police telling them

1    I had violated the Injunction, whether true or not. My attorney sua sponte

2    offered to fax my motion on my behalf. (Insert dramatic foreboding music here.)

3    32.  So on February 4, 2009, after he reviewed my first Emergency motion, my

4    attorney faxed a copy to Mrs. Bodine. His secretary contacted me for details and

5    I gave the secretary what I believed to be a dedicated fax number for Mrs.

6    Bodine at the church office where she worked. As such, I didn't see a need for

7    the secretary to fill in a cover sheet, although she sent a cover sheet anyway,

8    albeit mostly blank. I saw no need for confidentiality if I were wrong about the

9    fax number not being a dedicated machine sitting in Mrs. Bodine's office since

10   the motion was public record anyway, and since this was a church after all.

11   33.  There were no immediate repercussions from faxing (that I knew about) at the

12   time. Thus it confirmed my belief that faxing motions was a legitimate act and

13   did not violate the injunction.

14   34.  So about a month after the first fax, when I filed another Emergency motion

15   with the JP court, I sent another fax to Mrs. Bodine. But this time I had to send

16   the fax myself, since my counselor attorney was on a cruise and could not

17   review/approve my motion for sending. Still believing the need to fax an

18   Emergency motion a requirement of law, but hoping to mitigate Mrs. Bodine's

19   malicious tendencies, I wrote on the cover sheet, "Per man's law and God's." I

20   sent this second fax on March 13, 2009.

21   35.  It should be noted that in the five weeks between these two faxes, I had filed

22   some non-time critical motions with the court too. I did not fax those to Mrs.

23   Bodine. I only faxed time-critical motions, which I believed I was required to do

24   by law.

25                              THE POLICE RESPONSE

26   36.  Unbeknownst to me at the time, immediately after the first fax in February, Mrs.

27   Bodine had, true to form, run to Mr. Murray, her personal police officer at the

28   Prescott Police Department, claiming I had violated the Injunction when my

1    attorney faxed the first motion.

2    37.    Per Mrs. Bodine's claim (perhaps on authority from Mr. Moore), Mr. Murray

3           wrote in his police report that I "knowingly interfered with the judicial

4           proceeding of the Prescott Justice Court" by faxing court papers. Among other

5           mischaracterizations,[7] he reports that I did not contact Mrs. Bodine's attorney.

6           (Presumably defendant Moore.)[8] But, true to form when reporting about me (or

7           Mr. Bodine), Mr. Murray conveniently overlooked the fact that Mrs. Bodine did

8           not have an attorney representing her in the injunction. She was a pro se litigant.

9           So, despite the inference, there was no attorney I needed to contact.

10   38.    Nevertheless, with this and other spin, he forwarded his conclusionary report to

11          Mr. Savona for charging, titling it "MISC" for Misdemeanor Crime.

12   39.    A few days later in February, after Miss Thomas-Morgan received the same

13          court papers in the mail, Mr. Murray filed a Supplemental report to the faxing

14          one in an attempt to trump up another charge against me.

15   40.    This Supplemental report was basically a verbatim repeat of his previous report.

16          Despite the clear requirements of Rule 5(a), binding on me as a litigant in a civil

17          matter, Mr. Murray again concludes I knowingly violated the injunction by

18          mailing copies of motions to Mrs. Bodine. This report is titled "Harassment"

19          and was also sent to Mr. Savona for charging.

20   41.    Presumably, I would have been arrested on sight for ostensibly committing a

21          misdemeanor. But, as Mr. Murray wrote, my whereabouts were unknown,

22          especially since I don't live in Prescott.

23                                    IT'S A CRIME

24   42.    Sometime in March, Mr. Savona wrote up a criminal Complaint and fed it to

25

26   _____

27          [7] Not to mention outright false/incorrect statements of "fact."

28          [8] Hopefully Mr. Murray is not reporting hearsay from Mrs. Bodine as fact.
     Therefore, it must be that he had contacted Mr. Moore directly to state this as fact.

defendant Keller. Taking Mr. Savona's word as her only basis of "fact," she, in turn, (falsely) swore to Prescott JP Judge Markham that I "knowingly disobey[ed] or resist[ed] a lawful order, process or mandate of the Court" by faxing "papers to the workplace of the protected party without fulfilling requirements of Rule 5(C) of the Arizona Rules of Civil Procedure."

43. Lawyers can't believe it when I tell them this story.

44. Curiously, Mr. Murray never mentions Rule 5(c) of Arizona Rule of Civil Procedure in his report as grounds for criminal faxing. The applicability of Rule 5(c) aside, the fact is that neither Mr. Murray nor Mrs. Bodine are familiar with the Rules of Civil Procedure, It never occurred to them to use Rule 5(c) as a point of law.

45. Mrs. Kelly only swears out what Mr. Savona writes, and Mr. Savona is a criminal prosecutor not well versed in nuances of civil procedure. There's only one person who could come up with this cockamamie plan: Mrs. Bodine's divorce attorney, Mr. Moore.

46. In late March I received this criminal complaint at my mail box at the Post Office. Stamped March 19, 2009, it indicated I had been charged with A.R.S. § 13-2801(A)(2) for "knowingly" violating a court order.

47. The penalty was $460 and no jail time. (Although the latter was not in writing. I've since learned that no jail time can be used by a prosecutor as a trick to prevent an IFP litigant from obtaining a public defender. Which of course makes it easier for the Prosecutor to win.)

48. Strangely, I was never prosecuted for sending the second fax, which I did on my own, without an intervening attorney. If faxing had truly been criminal, I would think this charge would have been easier to prosecute.

49. As a proximate result of the criminal charge for criminal faxing, I was forced to place a large, non-refundable deposit of $5500 to retain my attorney for trial.

1            <u>ONE JUDGE DOESN'T SEE A CRIME</u>

2    50.    It is not really necessary to get into the minutia of whether Rule 5(c) applies

3           here. For as we'll see shortly, even if Rule 5(c) applied, Mr. Savona knew before

4           he filed the Complaint that he did not have probable cause to do so. That's

5           because the overarching element in A.R.S. 13-2801 is "knowingly."In this case,

6           ignorance of the law IS an excuse.

7    51.    As should be obvious from the facts so far, I did not know I could be violating

8           the injunction by faxing these two time-critical motions. How could I know I

9           was doing something wrong when my attorney said it was okay to do and even

10          faxed a motion for me?

11   52.    Even Mr. Savona sees this. In a police report he withheld from us, he

12          acknowledged I didn't know I wasn't supposed to fax.

13   53.    But for the record, to demonstrate the malicious prosecution and abuse of

14          process, Rule 5(c)(2)(D) is about alternate methods of service other than U.S.

15          Mail. To wit, "Service in General. A paper is served under this rule by . . .

16          delivering the paper by any other means, including electronic means, if the

17          recipient consents in writing to that method of service . . . in which event

18          service is complete upon transmission." Note that what I faxed could not be

19          considered service, since I had mailed Mrs. Bodine a copy of the emergency

20          motion as service.

21   54.    As it goes to probable cause, no court had ruled that I had violated the

22          Injunction nor violated Rule 5(c) of Civil Procedure. Judge Markham, who

23          issued the ex parte injunction, and who heard the criminal complaint alleging

24          criminal faxing, could have made such a ruling sua sponte and held me in

25          contempt. But he didn't because there was no grounds to do so.

26   55.    Ironically, instead, on March 25 I received a phone call from JP Judge Arthur

27          Markham's clerk, Cynthia Runner with an ex parte communique from the judge.

28          To my extra surprise, despite the clear requirement of Rule 5(a) and the

exclusions in injunction law for same, she said that Judge Markham told her to tell me that I was not to mail copies of court paperwork to my adversary. That to do so in the future would result in criminal sanctions. (This was put in writing later in a Nature of Proceedings printout.)

56. Wrong as Judge Markham's new instruction was, implicit here then is "knowingly." Ignoring for now that Judge Markham's new instruction was an unlawful order, if he really believed that "no contact" meant not even legal process for pro se litigants, he could have prosecuted me at the time for having previously mailed copies of paperwork to Mrs. Bodine. Thus ostensibly violating his injunction of no contact.

57. But he didn't prosecute me because he knew that, until his call, I couldn't have known that, in his world, I wasn't supposed to serve copies of court paperwork on my adversary in an injunction.

58. Caught in a Catch-22 (either obey the law and go to jail or ?), I stopped mailing legal paperwork to Mrs. Bodine.[9] Immediately after this, I filed a Rule 42(f) Notice for a change of judge—an automatic one time right in Arizona—away from Judge Markham for my upcoming injunction hearing. As such, Judge Markham was obligated to recuse immediately on March 31.

59. As a consequence of his forced recusal from my civil injunction hearing, Judge Markham was reminded that he also had a duty to recuse himself when he sat at my first pre-trial hearing.

## SECOND JUDGE CONCLUDES NO CRIME

60. Again, it's not really necessary to get into the minutia of Arizona R.Civ.P. Rule 5(c) because the overarching element of the crime proper is "knowingly." As

---

[9] Judge Markham did not offer an alternative for not complying with Rule 5(a). I ended up incurring the expense of having to pay the Prescott Court to forward copies of my motions and pleadings to Mrs. Bodine. To the best of my knowledge the JP court never made Mrs. Bodine pay to have her pleadings sent to me.

we'll see, Mr. Savona knew I did not act "knowingly." Which makes the minutia moot. But more fundamentally, there wasn't probable cause to charge me with a crime because, as a new judge ruled, faxing court documents did not violate the injunction.

61.   Here's what Judge Ray II wrote about it in a ruling dated August 3 (emphasis mine.):

> The methods by which service may be effected are set forth in Rule 5(c), Arizona Rules of Civil Procedure. Service by facsimile transmission, or other form of electronic transmission, is ineffective absent written consent by the recipient. **Ineffective service does not, *ipso facto*, mean that the transmission is, in and of itself, illegal.** Rather, it just means that it is ineffective as service. **Review of the IAH Order reflects that the legal process is exempt from the "no contact" Order. It appears that the document that was transmitted was a document fairly within the meaning of legal process that**, by operation of Rule 5(c) [Az.R.Civ.P.] was to be served upon the [Mrs. Bodine] by one or more of the authorized manners of service as set forth in Rule 5(c) [Az.R.Civ.P.].
>
>        . . . In the present case, had the document communicated to the Plaintiff not been a document filed with the Court **and clearly intended as legal process**, but, rather, had been a writing to harass, annoy, alarm, threaten, defame, slander or frighten the Plaintiff and was sent via an attorney, this Court would have no difficulty piercing the veil of attorney-client privilege.

62.   Structurally, then, there could not be probable cause to charge for a crime because there was no grounds for it.

63.   Nevertheless, Mr. Savona did not move to dismiss the case immediately after this ruling. Instead, he fought like hell, filing a motion for reconsideration (of attorney-client privilege). All this effort for a first time offense of a Class 1 misdemeanor of $460 and no jail time. Am I paranoid, or are they out to get me?

## WILLFULLY WITHHOLDING EXCULPATORY EVIDENCE

64.   The Supreme Court requires a prosecutor turn over all exculpatory evidence sua sponte per *Brady v. Maryland*. Arizona's Ethic Rule 3.4(d), and especially

1    3.8(d), require same.

2    65.    Even so, in mid-May, my attorney requested all exculpatory evidence in our

3           disclosure request, even providing Mr. Savona with a Brady/Kyles checklist.

4    66.    We received a packet of disclosure information from Mr. Savona shortly

5           thereafter. It was the only information we would receive.

6    67.    But quite by Providence, on October 1, 2009, well into pre-trial proceedings, I

7           discovered exculpatory evidence on my own in the form of Prescott police

8           report DR 09-11832.  Written on March 26, this was the mysteriously missing

9           police report I expected the ever ready Mr. Murray would write after I sent the

10          second fax.

11   68.    The DR for the second fax read basically the same as the DR for the first fax,

12          claiming a misdemeanor offense for "knowingly" violating a court order.

13   69.    However, unlike the trumped up police report of paragraph 38 which had a

14          "Connecting Report" number linking the DR for mailing a document with the

15          DR for faxing that same document, Mr. Murray did not connect this DR for the

16          second fax to the first. Even though the DR's were virtually the same.

17   70.    This DR had an end date of mid-April, before my attorney's request for all

18          exculpatory evidence and before Mr. Savona sent same.

19   71.    But in that DR Mr. Savona declined to file charges for the second, arguably

20          more prosecutable fax, stating "the complaint [for sending the second fax] was

21          denied because [Palmer—me] had not been served with the previous complaint

22          by the time of the second action. **[He] knows now** the state will prosecute for a

23          violation in the future." (Emphasis mine.)

24   72.    Thus, Mr. Savona admits that "knowingly" is a requisite mens rea for criminal

25          faxing.

26   73.    And more important, Mr. Savona admits he knows I didn't know I wasn't

27          supposed to fax when I did. (But I know now. And stopped.)

28   74.    No wonder he didn't release this last DR to us. It's damning.

## KNOWINGLY PRESENTED FALSE DOCUMENT TO COURT

75.   By preparing a Complaint for Mrs. Kelly to swear to, swearing I knowingly disobeyed a court order when he knew I didn't, Mr. Savona not only intentionally falsified a document (a felony in Arizona), he caused another to perjure herself before the Court.

76.   Arizona's Ethic Rule 3.3(a) says "A lawyer shall not knowingly make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer."

77.   Arizona Ethic Rule 3.8(a) says, "The prosecutor in a criminal case shall: refrain from prosecuting a charge that the prosecutor knows is not supported by probable cause;"

## NO REMORSE

78.   Despite knowing he did not have probable cause in the first place to initiate this action, and despite being told in Judge Ray's ruling he did not have probable cause to continue this action, Mr. Savona postured and offered my attorney some kind of plea. Having done nothing wrong, and not wanting to lie that I did (to cop a plea), I declined the offer.

79.   On November 2, 2009 the criminal faxing charge, being bogus, was dismissed by the Court "for the reason that it is in the best interest of justice . . ." per an un-stipulated motion to dismiss by Mr. Savona on October 30, 2009.

80.   Even though I did not agree to any plea or agreement, in the proposed (un-stipulated) Order that Mr. Savona lodged with the court, he spun the dismissal by adding the phrase ". . . as the Defendant is completing a deferred prosecution agreement." That was another false statement.

## INSULT TO INJURY

81.   As a proximate cause of this prosecution, my Second Amendment right (and my Arizona Constitution Article 2, Sec. 26 right) was revoked from the time of arraignment to dismissal.

82. I have watched Judge Markham set release conditions in disorderly conduct cases before. Even though he was obligated by the Code of Conduct to recuse before arraignment (as my attorney reminded him), Judge Markham delayed to give me his usual "no drinking alcohol and no weapons" release.

83. But he didn't orally state the latter. Curiously, despite not having said it, it appeared in the Order when the clerk printed it out in court.

84. We immediately went back into the courtroom where my attorney pointed out that I had not been charged with a violent crime, that the only "weapon" here was a fax machine, that I live 100 miles away, and there was no need for these release conditions.

85. Judge Markham turned to Mr. Savona, who had no problem relinquishing the alcohol restriction. But he refused to budge on the guns.

86. Judge Markham sided with his Prosecutor.

## EMOTIONAL DISTRESS

87. While, as a Christian, I'm supposed to be above emotional distress,[10] the fact is that defendants' actions have caused me to suffer emotionally and physically. I have suffered anguish, humiliation and depression.

88. Moreover, the emotional distress continues to this day. I now have a criminal record, which, unless ordered expunged by this Court, will haunt me for the rest of my life. To quote (retired) Maricopa Superior Court Judge Gary Donahoe, with whom I can empathize as he broke down in tears while testifying about the malicious prosecution he suffered at the hands of (disbarred) former Maricopa County Attorney Andrew Thomas, "Thirty years of trying to build a good reputation is gone because of their conduct."

89. Ths suffering continues as I'm forced to prosecute this civil rights lawsuit to get some justice. (Going on two years now, to the Ninth and back.)

---

[10] "For our light and momentary troubles are achieving for us an eternal glory that far outweighs them all." 2 Cor 4:17

## DISPARATE TREATMENT OF OTHERS SIMILARLY SITUATED

90. Unless Mr. Savona wishes to testify to the contrary, I trust he does not, and never has, withheld exculpatory evidence from anyone. Except me.

91. And likewise, I trust Mr. Savona does not, and never has prosecuted a case where he lacked probable cause to pursue the action in question. Except for mine.

92. I was criminally charged for Interfering with judicial proceedings. But when both Mr. Savona himself and Mrs. Keller lied to the court, they both violated that law too. (By lying before the court, they both "Disobey[ed] . . . the lawful order, process or other mandate of a court;") Yet he did not charge himself or Mrs. Keller with a crime.

93. Likewise, Mr. Murray falsified a number of police reports, claiming I knowingly interfered with proceedings by faxing and mailing court documents, even though Judge Ray found that mailing court documents was required legal service/process and that faxing court documents could never be considered violating an injunction (and therefore, cannot be interfering with judicial process.) Yet Mr. Savona has not charged Mr. Murray with the Class 1 misdemeanor of false reporting to law enforcement, as he charged me.

94. And when Mr. Bodine wrote to the Prescott police chief years ago, informing the chief that his wife had lied in a police report about her maiden name to try to incriminate me (claiming it was "Thomas-Morgan" when it was "Eells"), no one charged Mrs. Bodine with false reporting either. In fact, Mr. Murray was in court the day Mrs. Bodine was caught in that lie. Yet he's never filed a police report about it to send up to Mr. Savona.

## CLASS OF ONE

95. The Prescott Police Department has demonstrated that it favors one citizen (Mrs. Bodine/Miss Thomas-Morgan) at the expense of another. (Me.) This is not equal protection under the law.

96.   To wit, a couple years ago, much like this instant action, Mrs. Bodine initiated an unwarranted seizure by "dispatching" an officer by cell phone to go out of town to illegally seize me. The City of Prescott settled my first ever federal civil rights lawsuit in this District Court for a Fourth Amendment civil rights violation against me by its officers.[11]

## COUNT ONE

## VIOLATION OF 42 U.S.C. § 1983-MALICIOUS PROSECUTION

### (All Defendants)

97.   Plaintiff incorporates each and every allegation above as if fully set forth herein.

98.   This is a prima facie case of malicious prosecution. To wit,

   a.   the proceedings were terminated in favor of plaintiff.

   b.   There was no probable cause for charging plaintiff. And defendants knew it full well.

   c.   The fact the defendants knew exactly what they were doing but initiated (and continued) their prosecution without probable cause (and even after Judge Ray ruled that no prima facie crime had been committed) shows bad faith by the defendants. Instead of pursuing justice, they pursued me. They did this to vex, annoy or wrong me.

   d.   The fact that they withheld exculpatory evidence which contravened their probable cause claim, not to mention incriminated them, further demonstrates they acted in bad faith.

## COUNT TWO

## VIOLATION OF 42 U.S.C. § 1983 - ABUSE OF PROCESS

### (All Defendants)

99.   Plaintiff incorporates each and every allegation above as if fully set forth herein.

100.   This is a prima facie case of abuse of process. To wit, defendants, by initiating

---

[11] *Palmer v. City of Prescott, et al.*, CV 10-8013-PCT

1   prosecution knowing full well there was no probable cause (the Prosecutor

2   himself admitting he knew plaintiff didn't have the requisite mens rea)

3   knowingly and willfully acted to use the judicial process for an ulterior purpose

4   not proper in the regular conduct of proceedings.

5   101.   Since defendant Savona himself acknowledged that plaintiff didn't know I

6   wasn't supposed to fax, defendant Savona had no probable cause to charge

7   plaintiff for interfering with a judicial proceeding. Therefore, Mr. Savona

8   lacked jurisdiction to initiate this prosecution. It was not a prosecutorial

9   function to cause Mrs. Kelly to swear out a complaint where no probable cause

10   for a complaint exists. And a false complaint at that.

11   102.   As soon as committed this fraud upon the court, violating this oath and the

12   E.R.'s, he also lacked jurisdiction. At that point on, he was effectively barred

13   from acing as an officer of the court in plaintiff's criminal action.

14   **COUNT THREE**

15   **42 U.S.C. § 1983 - DEPRIVATION OF FOURTEENTH AMENDMENT**

16   (Defendants Murray, Savona)

17   103.   Plaintiff incorporates each and every allegation above as if fully set forth herein.

18   104.   By withholding exculpatory evidence and/or giving apparent cause for it being

19   withheld (by not linking the police report about the second fax to the police

20   report about the first), defendants deprived plaintiff of his Fourteenth

21   Amendment right to do process as clearly stated in *Brady v. Maryland*.

22   **COUNT FOUR**

23   **42 U.S.C. § 1983 - DEPRIVATION OF FOURTH AMENDMENT**

24   (All defendants)

25   105.   Plaintiff incorporates each and every allegation above as if fully set forth herein.

26   106.   Given that there was no probable cause to bring the overarching criminal

27   complaint against plaintiff in the first place, defendants are automatically liable

28   for any harm that accrues from their initial bad act.

107.   Plaintiff suffered the deprivation of his personal liberty pretrial (Fourth Amendment) for more than five months.

## COUNT FIVE

## 42 U.S.C. § 1983 - DEPRIVATION OF SECOND AMENDMENT

(All defendants)

108.   Plaintiff incorporates each and every allegation above as if fully set forth herein.

109.   Given that there was no probable cause to bring the overarching criminal complaint against plaintiff in the first place, defendants are automatically liable for any harm that accrues from their initial bad act.

110.   Plaintiff suffered the deprivation of his Second Amendment right pretrial for more than five months.

## COUNT SIX

## 42 U.S.C. § 1985(3) - CONSPIRACY

(Defendants Savona, Murray, Thomas-Morgan, Moore, Keller)

111.   Plaintiff incorporates each and every allegation above as if fully set forth herein.

112.   Plaintiff alleges:

    a.      a conspiracy, starting with Thomas-Morgan and Murray, then from Murray to Savona. Savona then conspired with Thomas-Morgan and Moore. Last, Savona conspired with Keller.

    b.      the conspiracy was for the purpose of depriving plaintiff his Fourth and Fourteenth Amendment right to due process and equal protection under law.

    c.      the conspirators acted to further the conspiracy by initiating a criminal complaint by first falsely informing the Prescott prosecutor Savona that plaintiff knowingly violated a court order. Then, when Savona needed more to make a case, defendant Moore suggested to Mr. Savona that he (Savona) could use Rule 5(c) of the Arizona Rules of Civil procedure as quasi-legal theory to prosecute plaintiff. After Savona had what he

1    thought he needed, he conspired with Keller to lie to the court.

2    d.    As a result of their conspiring together, they synergistically caused

3          deprivation of plaintiff's Fourteenth Amendment right and injured him

4          emotionally and economically. No single conspirator, acting alone, could

5          have caused plaintiff this harm.

6    ## COUNT SEVEN

7    ## 42 U.S.C. § 1986 - ACTION FOR NEGLECT TO PREVENT

8    (All defendants)

9    113.   Plaintiff incorporates each and every allegation above as if fully set forth herein.

10   114.   All of the conspirators above knew that what they were doing was wrong. Any

11          of the conspirators above could have acted to prevent the wrong. Among items

12          in their power, they could have contacted plaintiff (or his attorney) with the

13          information that defendant Savona had withheld exculpatory evidence showing

14          plaintiff did not have the mens rea for the crime charged; they could have

15          contacted Judge Markham and/or other law enforcement authorities to report a

16          fraud on the court (perjury); they could have gone to the media and reported

17          their story; they could have refused to testify and/or recanted their statements.

18   115.   By refusing to act to prevent the Fourth and Fourteenth Amendment deprivation

19          to plaintiff, every person in the conspiracy is liable for damages incurred by

20          plaintiff.

21   ## COUNT EIGHT

22   ## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

23   (All defendants)

24   116.   Plaintiff incorporates each and every allegation above as if fully set forth herein.

25   117.   The defendants' conduct, as described above, was extreme and outrageous.

26   118.   The defendants' conduct was intentional and reckless.

27   119.   The defendants intended to harm—and did harm—plaintiff. As such, plaintiff

28          has suffered severe emotional distress as a result of defendants' action. (And

1     also, as above, defendants' inaction.)

2     **COUNT NINE**

3     **FALSE LIGHT INVASION OF PRIVACY**

4     (All defendants)

5   120.   Plaintiff incorporates each and every allegation above as if fully set forth herein.

6   121.   Defendants knowingly made statements that were untrue and intended to

7        misrepresent plaintiff's character, history, activities and beliefs.

8   122.   Defendants also made comments or suggestions that created a false implication

9        about plantiff.

10   123.   These false and/or misleading statements were made public by way of the court

11       system. (If nothing else, I now have a criminal record.)

12   124.   Defendants knew (or reasonably should have known) that their statements

13       regarding Plaintiff were false and/or represented him in a false light.

14     **COUNT TEN**

15     **NEGLIGENT SUPERVISION FAILURE TO SUPERVISE**

16     (Defendant City of Prescott)

17   125.   Plaintiff incorporates each and every allegation above as if fully set forth herein.

18   126.   The City of Prescott has no oversight protocol to know if Mr. Savona, Mr.

19       Murray or Mrs. Keller perjure themselves. Nor does the City care. The City

20       ultimately relies on the word and honor of these employees that they are

21       carrying out their duties as they should.

22   127.   As such, the City has ceded its final policy making authority regarding probable

23       cause determinations/initiations of criminal complaints to Mr. Savona, Mr.

24       Murray and Mrs. Keller individually.

25   128.   As such, the City is liable for their actions as its employees.

26

27

28

## ALL COUNTS
## PUNITIVE DAMAGE STATEMENT
### (All defendants)

129.   The acts of the defendants toward plaintiff amount to conduct that shocks the conscience, especially since some are officers of the court.

130.   The actions of the Defendants were entered into with an evil mind and therefore, punitive damages are appropriate.

**WHEREFORE**, Plaintiff prays for Judgment against Defendants, and each of them, as follows:

A.   For compensatory damages to be paid to the charities of my choice, plus special and incidental damages in such a sum as may be proven at trial;

B.   For punitive damages in an amount to be proven at trial;

C.   For costs for the suit;

D.   For attorney's fees or equivalent;

E.   For Declaratory relief, ordering that the entire record of case No. 2009030317C in the Prescott Justice Court be expunged and likewise, the police reports in the Prescott Police Department reporting plantiff's faxing and mailing court papers as crimes be expunged from the record so that my good name may be somewhat restored.

G.   For other such relief as this Court deems just and proper.

SUBMITTED this 21st day of November 2012

By: _P. Michael Palmer_
P. Michael Palmer
18402 N. 19th Ave., #109
Phoenix, AZ 85023
602-513-3738