1   **WO**

2

3

4

5

6               IN THE UNITED STATES DISTRICT COURT

7                   FOR THE DISTRICT OF ARIZONA

8

9   Peter Michael Palmer,                  No. CV-10-08209-PCT-JAT

10                  Plaintiff,              **ORDER**

11  v.

12  Glenn A. Savona, individually and in his
    official capacity as Prescott City Prosecutor
13  and Jane Doe Savona, husband and wife;
    Dan Murray, individually and in his official
14  capacity as City of Prescott police
    department employee and Jane Doe
15  Murray, husband and wife; Christine
    Keller, individually and in her official
16  capacity as City of Prescott police
    department employee and Joseph Keller,
17  wife and husband; Melody Thomas-Morgan
    (f.k.a. Melody Bodine), an individual; Mark
18  M. Moore and Jane Doe Moore,
    individuals, husband and wife; City of
19  Prescott, an Arizona municipal corporation,
20
21
22                  Defendants.

23          Pending before the Court is Defendants Glenn Savona, Dan Murray, Christine

24  Keller, and the City of Prescott's (the "Prescott Defendants") Motion to Dismiss (Doc.

25  48). Plaintiff Peter Michael Palmer filed a Response (Doc. 54) and the Prescott

26  Defendants' filed a Reply in Support of their Motion to Dismiss. (Doc. 55). The Court

27  now rules on the motion.

28

I.      **FACTUAL BACKGROUND**[1]

On January 23, 2009, Plaintiff was served with an ex parte civil injunction (the "injunction") prohibiting Plaintiff from having any contact with Defendant Melody Thomas-Morgan or her minor children, except through "attorneys, legal process, [or] court hearings" (Doc. 48-1 at 23; Doc. 38 at 11). Plaintiff subsequently challenged the injunction in the City of Prescott Justice Court ("Prescott Justice Court") (Doc. 38 at 11).

On February 4, 2009, Plaintiff's "attorney sua sponte" faxed a "motion on [Plaintiff's] behalf" to Defendant Thomas-Morgan (the "first fax"). (Doc. 38 at 12). Plaintiff provided his attorney with the "fax number for [Defendant Thomas-Morgan] at the church office where [Defendant Thomas-Morgan] worked." (Doc. 38 at 12). As a result of this first fax to Defendant Thomas-Morgan's place of employment, on February 4, 2009, Defendant Dan Murray, a City of Prescott Police Department employee sent a request to Defendant Glenn Savona, the Prescott City Prosecutor, to file a criminal complaint against Plaintiff for violating the injunction. (Doc. 54 at 23).

On March 13, 2009, Plaintiff sent a second fax (the "second fax") to Defendant Thomas-Morgan. (Doc. 38 at 14). The second fax was sent by Plaintiff personally. (*Id.*).

On March 19, 2009, Defendant Savona filed a complaint (the "criminal complaint") with the Prescott Justice Court charging Plaintiff with violating Arizona Revised Statutes section 13-2810(A)(2) for "knowingly disobey[ing] or resist[ing] the lawful order . . . of the [c]ourt." (Doc. 48-1 at 11). The criminal complaint was signed by Defendant Christine Keller, a City of Prescott Police Department employee. (*Id.*). In late March, Plaintiff received a copy of the criminal complaint via mail. (Doc. 38 at 16).

On March 25, 2009, Judge Markham, the judge who enforced the injunction, instructed Plaintiff that he "was not to mail copies of court paperwork to [his] adversary." (Doc. 38 at 17).

---

[1] Unless otherwise noted, the facts set forth herein are as alleged by Plaintiff in his First Amended Complaint (Doc. 38).

On June 23, 2009, Judge Markham held a pre-trial hearing regarding the criminal complaint. (Doc. 48-1 at 7). At the hearing, Judge Markham ordered Plaintiff to "obey all laws & have no contact with [Defendant Thomas-Morgan]" and "not to possess ANY deadly weapons during the pendency of this case." (Doc. 48-1 at 7) (emphasis in original). In response to Plaintiff's request for a change of judge, Judge Markham recused himself and the case was transferred to Judge Ray. (Doc. 38 at 18). Judge Markham informed Plaintiff at the hearing that "Judge Ray will set the trial date and notify all parties." (Doc. 48-1 at 7).

On July 2, 2009, Plaintiff filed a motion to modify the release conditions set by Judge Markham on June 23, 2009 to allow Plaintiff to "possess weapons during the pendency of the case." (Doc. 48-1 at 13). On July 24, 2009, Judge Ray denied Plaintiff's motion to modify the release conditions. (Doc. 48-1 at 18).

On October 5, 2009, Plaintiff filed a Motion to Dismiss the charge listed in the criminal complaint. (Doc. 48-1 at 27). Plaintiff argued that "Mr. Palmer['s] actions were specifically permitted by the order of the court and, even if the Court finds those actions were not permitted, no evidence exists to show that Mr. Palmer knowingly violated the order of this court." (Doc. 48-1 at 27). On October 22, 2009, Judge Ray denied Plaintiff's Motion to Dismiss, ruling that "the [criminal] complaint is sufficient as a matter of law." (Doc. 55-1 at 7).

On October 30, 2009, Defendant Savona filed a Motion to Dismiss the criminal complaint. On November 2, 2009, Judge Ray granted Defendant Savona's motion to dismiss. (Doc. 48-1 at 5).

On October 29, 2010, Plaintiff filed a complaint with this Court alleging violations of Plaintiff's civil rights. (Doc. 1). On January 2, 2013, Plaintiff filed an amended civil complaint (the "civil complaint"). (Doc. 38). In the amended civil complaint, Plaintiff alleges thirteen separate counts against Defendants, namely: (1) malicious prosecution under state law, (2) violations of his Fourth Amendment rights, (3) abuse of process

under state law, (4) violations of his Fifth Amendment rights, (5) violations of his "right to a fair trial" under the Fourteenth Amendment, (6) deprivation of his right to due process as stated in *Brady v. Maryland* under the Fourteenth Amendment, (7) malicious prosecution under 42 U.S.C. § 1983, (8) violation of his Second Amendment rights, (9) conspiracy to deprive Plaintiff of his constitutional rights under 42 U.S.C. §1985(3), (10) negligence in failure to prevent the conspiracy depriving Plaintiff of his constitutional rights under 42 U.S.C. § 1986, (11) intentional infliction of emotional distress under state law, (12) false light invasion of privacy under state law, and (13) negligent supervision under state law. (*Id.*).

On January 30, 2013, the Prescott Defendants filed a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 48).

## II.   LEGAL STANDARD

### A.   Motion to Dismiss

To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Rule 8. Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Although a complaint attacked for failure to state a claim does not need detailed factual allegations, the pleader's obligation to provide the grounds for relief requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "On a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (internal citations omitted). The factual allegations of the complaint must be sufficient to raise a right to relief above a speculative level. *Id.*

Rule 8's pleading standard demands more than "an unadorned, the defendant-

- 4 -

unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). A complaint that offers nothing more than blanket assertions will not suffice. To survive a motion to dismiss, a complaint must contain sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Id.* Facial plausibility exists if the pleader pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Plausibility does not equal "probability," but plausibility requires more than a sheer possibility that a defendant has acted unlawfully. *Id.* "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' *Id.* (quoting *Twombly*, 550 U.S. at 557). Because Plaintiff is proceeding *pro se*, the Court must construe his Complaint liberally, even when evaluating it under the *Iqbal* standard. *Johnson v. Lucent Technologies Inc.*, 653 F.3d 1000, 1011 (9th Cir. 2001). However "[s]omething labeled a complaint but written more as a press release, prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint." *McHenry v. Renne*, 84 F.3d 1172, 1180 (9th Cir. 1996). "Prolix, confusing complaints . . . impose unfair burdens on litigants and judges." *Id.* at 1179.

In deciding a motion to dismiss under Rule 12(b)(6), the Court must construe the facts alleged in a complaint in the light most favorable to the drafter of the complaint, and the Court must accept all well-pleaded factual allegations as true. *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). Nonetheless, the Court does not have to accept as true a legal conclusion couched as a factual allegation, *Papasan*, 478 U.S. at 286, or an allegation that contradicts facts that may be judicially noticed by the Court, *Shwarz*, 234 F.3d at 435.

### B.    Leave to Amend

Under previous Ninth Circuit Court of Appeals precedent, the court would *sua*

*sponte* grant leave to amend when granting a motion to dismiss, unless a pleading could not be cured by the allegation of other facts. *See Lacey v. Maricopa County*, 693 F.3d 896, 927 (9th Cir. 2012) (citing *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)). However, this precedent has been called into question by the Court of Appeals, in light of the recent changes to the Federal Rule of Civil Procedure 15, which now allows parties twenty-one days from responsive pleadings and motions to dismiss to amend as of right. *See Lacey*, 693 F.3d at 927.

Moreover, when a party properly seeks leave to amend, the Court considers the following factors when deciding whether or not to grant leave to amend: (1) undue delay, (2) bad faith, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether plaintiff has previously amended his complaint. *Western Shoshone Nat. Council v. Molini*, 951 F.2d 200, 204 (9th Cir. 1991). In the present case, Plaintiff has previously filed a First Amended Complaint in response to a prior motion to dismiss. This Court's Order of January 10, 2013 informed Plaintiff that "[n]o further amendments to the Complaint will be permitted unless Plaintiff first obtains leave of the Court. *See* Fed. R. Civ. P. 15(a)(2)." (Doc. 44 at 2 n.1). Despite this warning, Plaintiff's response to Prescott Defendants' motion to dismiss includes several attempts to improperly add or otherwise amend several of his claims. (*E.g.*, Doc. 54 at 10). The Court could properly deny plaintiff's attempts to amend in violation of both the local rules and this Court's previous order without further discussion. However, because the Court must generally construe a pro se plaintiff's complaint liberally, the Court will consider Plaintiff's additional allegations in the analysis of the motion to dismiss.

## III.   ANALYSIS

The Prescott Defendants move to dismiss all of the claims in Plaintiff's complaint. (Doc. 48).

### A.   Malicious Prosecution under State Law (Count One)

In count one, Plaintiff alleges a claim of malicious prosecution against Defendants

Savona, Murray, Keller, Thomas-Morgan, and Moore. In Arizona, to succeed on a state law claim of malicious prosecution, the Plaintiff must show that: (1) there was a criminal prosecution, (2) that terminated in favor of the plaintiff, (3) the defendants were the prosecutors, (4) the criminal prosecution was actuated by malice, (5) the prosecution was without probable cause, and (6) the prosecution caused damages. *Slade v. City of Phoenix*, 541 P.2d 550, 552 (Ariz. 1975). The existence of probable cause is a "complete and absolute defense to an action for malicious prosecution." *Id.*

The Prescott Defendants argue the state law claim of malicious prosecution should be dismissed because Plaintiff has not alleged sufficient facts to show two of the elements needed for a state law malicious prosecution claim, namely: malice and lack of probable cause. Specifically, the Prescott Defendants argue that Plaintiff has not shown the prosecution was actuated by malice and that Plaintiff's version of the facts as alleged do not demonstrate that Defendant Savona did not have probable cause at the time he filed the criminal complaint. In response, Plaintiff argues that he has alleged facts that show Defendant Savona lacked probable cause to file the criminal complaint and that Defendants engaged in "wrongful and bad faith conduct" and, as a result, acted maliciously. (Doc. 38 at 24-6) (Doc. 54 at 3-4).

As stated above, the existence of probable cause is an absolute defense to a state law claim of malicious prosecution. Accordingly, the Court will consider first whether, based on the facts alleged by Plaintiff, there was probable cause to initiate the criminal proceedings.

### 1.    Probable Cause

First, the Court notes that several of the other counts in Plaintiff's complaint rely on Plaintiff's argument that Defendant Savona did not have probable cause when he filed the criminal complaint. The existence or lack of probable cause is a question of law to be determined by the Court. *Slade v. City of Phoenix*, 541 P.2d 550, 553 (Ariz. 1975). As a result, Plaintiff's statements regarding a "lack of probable cause" are legal conclusions

that the Court is not required to accept as true in deciding on a motion to dismiss. *See Twombly*, 550 U.S. at 555 ("on a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation"). The Court must examine whether the facts, as alleged, support Plaintiff's legal conclusion.

To support his legal conclusion that Defendant Savona lacked probable cause to file the criminal complaint, Plaintiff makes factual allegations relating to a police report, Judge Ray's August 5, 2009 Order, and the ultimate dismissal of the criminal action.

Plaintiff first argues that, in the police report, Defendant Savona "admit[s] that [Plaintiff] did not have the mens rea to commit a crime" when Plaintiff sent the second fax. (Doc. 54 at 2). Plaintiff admits the police report is essential to support his malicious prosecution claim. (*Id.* at 2). Regarding the police report, Plaintiff states:

> Savona 'denied' the second faxing complaint against me because I 'had not been served with the previous complaint by the time of the second action.' [Savona] further states [in the police report] that after I had been criminally charged for the first fax, '[Mr. Palmer] knows now the state will prosecute for a violation in the future.' Thus he acknowledges I did not have the requisite mens rea for him to charge me for the second fax. Since I did not know it was a crime to fax the second time, I could not know it was a crime to fax the first. Logically, since I did not have the requisite mens rea for Savona to charge me for the second fax, I could not have had the requisite mens rea for him to charge me for the first.

(Doc. 38 at 24-5). Essentially, Plaintiff argues that, because Defendant Savona "knew" Plaintiff was unaware he was violating a court order when Plaintiff sent the second fax, "there is no way [Defendant Savona] could [have] believed [Plaintiff] was guilty" of violating the court order by sending the first fax. (Doc. 54 at 3). As a result, Plaintiff argues Defendant Savona lacked probable cause to bring the criminal complaint. (*Id.*).

Plaintiff provided this police report to the court as an attachment. (Doc. 31 at 18).

- 8 -

The Court takes judicial notice of this police report as a public record.[2] The police report states:

> On 4/20/09 I received an action request from Prescott City Prosecutor Glenn Savona dated 4/16/09. The complaint was denied because the defendant had not been served with the previous complaint by the time of the second action. Defendant knows now the state will prosecute for a violation in the future. Case closed.

---

[2]     The Prescott Defendants request that the Court take judicial notice of public records from the criminal case against Plaintiff. (Doc. 48 at 2). In response, Plaintiff states that he "has no objection to the Court taking judicial notice of public records." (Doc. 54 at 2). As stated above, the Court is generally not permitted to consider material beyond the complaint in ruling on a motion to dismiss. However, the Court may "take judicial notice of matters of public record" in ruling on a motion to dismiss. *Five Points Hotel P'ship v. Pinsonneault*, 835 F. Supp. 2d 753, 757 (D. Ariz. 2011).

"Judicial notice is a tool which the court and the parties may use to establish certain facts without presenting evidence." *Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285, 1311 (S.D. Cal. 2003) (citation omitted). Pursuant to Rule 201 of the Federal Rules of Evidence, a district court may take judicial notice of facts that are not subject to reasonable dispute and either "generally known" in the community or "capable of accurate and ready determination by reference to sources whose accuracy cannot be reasonably questioned." Fed. R. Evid. 201(b), (c). A district court may take judicial notice "at any stage of the proceeding[.]" Fed. R. Evid. 201(b)(2), (d); *see also United States v. Zepeda*, 705 F.3d 1052, 1064 (9th Cir. 2013). While a district court may not take judicial notice of a fact that is subject to reasonable dispute, the court may take judicial notice of undisputed matters of public record. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001). Here, Plaintiff states he has no objection to the Court taking judicial notice of the public records. (Doc. 54 at 2; Doc. 31 at 18). Because these facts are not disputed by the parties and are matters of public record, the Court will take judicial notice of the following documents: the police report (Doc. 31 at 18), Defendant Savona's Motion to Dismiss and Order (Doc. 48-1 at 4-5), Minute Entry dated June 23, 2009 (*Id.* at 7), Summons dated March 3, 2009 (*Id.* at 10), Complaint dated March 3, 2009 (*Id.* at 11), Motion to Modify Release Conditions (*Id.* at 13), Reply to State's Response to Motion to Modify Release Conditions (*Id.* at 15-17), Minute Entry dated July 24, 2009 (*Id.* at 18), Injunction Against Harassment (*Id.* at 23-24), Motion to Dismiss (*Id.* at 27-31), Action on Request for Criminal Complaint (Doc. 54 at 23), Ruling Re: Attorney-Client Privilege Waiver (Doc. 55-1 at 3-5), Minute Entry dated October 22, 2009 (*Id.* at 7).

(*Id.*). Contrary to Plaintiff's allegation that Defendant Savona wrote this police report, a review of the document shows that it was written and signed by a police officer, Defendant Murray. (*Id.*). As an initial matter, because this police report was not written by Defendant Savona, it does not demonstrate Defendant Savona's opinion or state of mind. As a result, the police report referenced by Plaintiff does not address whether or not Defendant Savona believed he had probable cause to file the criminal complaint, as Plaintiff alleges. However, even if this document did show Defendant Savona's opinion or state of mind, it does not support Plaintiff's conclusory allegation that Defendant Savona did not have probable cause to file the criminal complaint.

Plaintiff also argues that Judge Ray's August 5, 2009 Order (Doc. 55 at 17) supports his argument that Defendant Savona lacked probable cause to initiate the criminal proceedings against him. (Doc. 54 at 3). However, Judge Ray's order addressed a question of attorney-client privilege and did not evaluate whether Defendant Savona had probable cause at the time the criminal complaint was filed. (*Id.*). Further, even if Judge Ray's order did conclude, as Plaintiff alleges (*Id.*), that "there was no crime by faxing," this does not change the probable cause analysis. As long as there was probable cause at the time the initial criminal complaint was filed, "it is not material" that the individual is ultimately found to be innocent. *See Cullison v. City of Peoria*, 584 P.2d 1156, 1159 (Ariz. 1978). When there is probable cause to initiate the action, the prosecutor is "not required to conduct a trial before determining whether or not" to bring the charges. *Id.* As a result, Judge Ray's August 5, 2009 order does not support Plaintiff's conclusory allegation that Defendant Savona lacked probable cause to bring the complaint.

Plaintiff also argues that the fact that Defendant Savona ultimately filed a motion to dismiss the case shows there was no probable cause to initiate the proceedings. However, "subsequent dismissal of the criminal proceedings does not in and of itself indicate that there was no probable cause at the time the arrest was made or charges

filed." *Todd v. Melcher*, 462 P.2d 850, 853 (Ariz. Ct. App. 1969). Accordingly, Plaintiff's factual allegations do not support his legal conclusion that Defendant Savona lacked probable cause to file the criminal complaint. As a result, the Court will determine whether, according to the facts alleged, probable cause existed to file the criminal complaint.

In analyzing whether there was probable cause to initiate a criminal proceeding under a state law claim for malicious prosecution, the Court considers whether there was "a reasonable ground of suspicion, supported by circumstances sufficient to warrant an ordinarily prudent man in believing the accused [was] guilty of the offense." *Gonzales v. City of Phoenix*, 52 P.3d 184, 187 (Ariz. 2002) (citing *McClinton v. Rice*, 265, P.2d 425, 431 (Ariz. 1953)). "Whether a given state of facts constitutes probable cause is always a question of law to be determined by the court." *Slade v. City of Phoenix*, 541 P.2d 550, 553 (Ariz. 1975). "The test generally applied is: upon the appearances presented to the [Prosecutor], would a reasonably prudent man have instituted or continued the proceeding?" *Gonzales*, 52 P.3d at 187.

In the present case, Defendant Savona filed a criminal complaint alleging Plaintiff violated Arizona Revised Statutes section 13-2810(A)(2) by "fax[ing] or caus[ing] to be faxed, papers to the workplace of the protected party without fulfilling requirements of Rule 5(C) of the Arizona Rules of Civil Procedure[]." (Doc. 48-1 at 11). Arizona Revised Statutes section 13-2810(A)(2) states that "a person commits interfering with judicial proceedings if such person knowingly disobeys or resists the lawful order, process, or other mandate of a court." Thus, for probable cause to have existed in this case, there must have been a reasonable ground of suspicion, supported by circumstances sufficient to warrant a reasonable man to believe that Plaintiff was guilty of knowingly disobeying a court order by faxing papers to the workplace of Defendant Thomas-Morgan without fulfilling the requirements of Arizona Rule of Civil Procedure 5(C).

The term "knowingly" is defined in Arizona Revised Statutes section 13-

105(10)(a) as meaning "with respect to conduct or to a circumstance described by a statute or defining an offense, that a person is aware or believes that the person's conduct is of that nature or that the circumstance exists. *It does not require any knowledge of the unlawfulness of the act or omission.*" Ariz. Rev. Stat. § 13-105(10)(a) (emphasis added). A person acts "knowingly" if they act "voluntarily and intentionally and not by accident or mistake." *United States v. Jewell*, 532 F.2d 697 (9th Cir. 1976). Additionally, even if a person believes their actions are legal, that person can still act "knowingly" to violate Arizona Revised Statutes section 13-105. *See State v. Morse*, 617 P.2d 1141, 1147 (Ariz. 1980). Thus, in order to believe Plaintiff "knowingly" disobeyed the court order, there has to be a reasonable belief that Plaintiff acted voluntarily and Plaintiff's actions were not by accident, mistake, or inadvertence. Plaintiff's belief that he thought his actions were legal is irrelevant to the question of probable cause under Arizona Revised Statutes section 13-105.

In this case, the Plaintiff's only allegations regarding the lack of probable are as follows:

The injunction against Plaintiff was in effect at the time of the first fax. (Doc. 48-1 at 23). The injunction stated "[Mr. Palmer] shall have no contact with [Defendant Thomas-Morgan] except through attorneys, legal process, [and] court hearings." (*Id.*). The injunction also stated "[Mr. Palmer] shall not go to or near [Defendant Thomas-Morgan's] or other Protected Person's Workplace." (*Id.* at 24). On January 23, 2009, Plaintiff was "served" with the injunction. Plaintiff was aware of the injunction against him when the first fax was sent to Defendant Thomas-Morgan (Doc. 38 at 13).

On February 4, 2009, Plaintiff, through an attorney, sent a document to Defendant Thomas-Morgan at her place of work. The document was Plaintiff's "first emergency motion" in the case involving the injunction. (Doc. 38 at 13). Plaintiff admits this fax "could not be considered service" since he also mailed a copy of the motion to Defendant Thomas-Morgan as service. (Doc. 38 at 17). Defendant Thomas-Morgan did not agree or

consent to service by facsimile transmission. (Doc. 55-1 at 5).

On February 4, 2009, "immediately after [receiving] the first fax," Defendant Thomas-Morgan informed Defendant Murray that Plaintiff had violated the injunction. (Doc. 38 at 14). Defendant Murray "instantly generated" a police report and forwarded it to Defendant Savona "for charging." (*Id.* at 14-15). After receiving the police report from Defendant Murray, Defendant Savona requested "info on the fax – who received, when, where – how addressed cover sheet" from Defendant Murray. (Doc. 54 at 23). In that request Defendant Savona further stated "Rule 5 of Rules of Civil Procedure indicates delivery by facsimile is not waived without court order or agreement of the parties." (*Id.*).

On March 19, 2009, Defendant Savona filed a criminal complaint against Plaintiff for knowingly violating a court order under Arizona Revised Statutes section 13-2810(A)(2). (Doc. 38 at 16).

Based on the facts as alleged by Plaintiff, there was a reasonable ground of suspicion, supported by circumstances sufficient to warrant a reasonable man to believe that Plaintiff was guilty of violating Arizona Revised Statutes section 13-105. Accordingly, as alleged by Plaintiff, Defendant Savona had probable cause to initiate the criminal proceedings against Plaintiff. Therefore, Plaintiff has failed to state a claim upon which relief can be granted for malicious prosecution.

### 2.    Malice

As stated above, the existence of probable cause is an absolute defense to a state law claim of malicious prosecution. *Slade*, 541 P.2d at 553. Because the Court has found, based on the facts alleged by Plaintiff, that there was probable cause at the time the criminal complaint was filed, the Court need not reach Defendants' alternative argument that Plaintiff did not allege facts to support a finding of malice.

Accordingly, Plaintiff has failed to state a claim upon which relief can be granted and count one of malicious prosecution under state law is dismissed.

1

**B.      Abuse of Process under State Law (Count Three)**

2         In count three of Plaintiff's Amended Complaint, Plaintiff alleges that Defendants

3    Savona, Keller, and Murray "knowingly and willfully acted to use the judicial process for

4    an ulterior purpose not proper in the regular conduct of proceedings." (Doc. 38 at 27)

5    (Doc. 54 at 10). Plaintiff argues that the "overarching purpose of the 'legal process' is to

6    'establish justice'" and, here, the Defendants did not use the process to "promote justice"

7    because they "presented fabricated evidence to the court." (Doc. 54 at 11). Plaintiff

8    claims that Defendant's "ulterior motive was to stop [Plaintiff] from faxing motions as a

9    favor to defendant Thomas-Morgan." (*Id.*).

10        Under Arizona law, abuse of process requires "(1) a willful act in the use of

11   judicial process (2) for an ulterior purpose not proper with the regular conduct of the

12   proceeding." *Houston v. Arizona State Bd. of Educ.*, No. CV-10-8160-PHX-GMS, 2012

13   WL 466474, at *7 (D. Ariz. Feb. 14, 2012) (citing *Nienstedt v. Wetzel*, 651 P.2d 876, 881

14   (Ariz. App. 1982)). "An 'ulterior purpose' requires showing that the process is 'used

15   primarily to accomplish a purpose for which the process was not designed.'" *Id.*

16   However, to state a claim for abuse of process, it is not enough to allege a defendant, who

17   legitimately used the process for its authorized purposes, had "bad intentions . . . an

18   incidental motive of spite or an ulterior purpose of benefit to the defendant." *Id.* A

19   plaintiff alleging an abuse of process claim must allege "that the defendant used a court

20   process for a primarily improper purpose, [and] that, in using the court process, the

21   defendant took an action that could not logically be explained without reference to the

22   defendant's improper motives." *See Crackel v. Allstate Ins. Co.*, 92 P.3d 882, 889 (Ariz.

23   App. 2004).

24        Plaintiff alleges that it was an abuse of process for a criminal complaint to be filed

25   against him based on his fax to Defendant Thomas-Morgan. As determined above, based

26   on the facts alleged by Plaintiff, Defendant Savona had probable cause to believe Plaintiff

27   knowingly violated a court order.  Based on this reasonable belief of probable cause,

28

Defendant Savona filed a criminal complaint against Plaintiff. These allegations are insufficient to state a claim for abuse of process. *See Morn v. City of Phoenix*, 730 P.2d 873, 877 (Ariz. App. 1986) (explaining that simply initiating a lawsuit cannot, on its own, amount to abuse of process).

Furthermore, according to the facts alleged by Plaintiff, Defendant's "ulterior motive" was to prevent Plaintiff from faxing motions "as a favor" to Defendant Thomas-Morgan. (Doc. 54 at 11). First, Plaintiff has alleged no facts that support his statement that the criminal complaint was filed only "as a favor" for Defendant Thomas-Morgan. Even assuming, arguendo, that Plaintiff's unsupported statement is true, "an incidental motive of spite or an ulterior purpose" is insufficient to support a claim for abuse of process. *Arizona State Bd. of Educ.*, 2012 WL 466474, at *7. Second, the fact that Defendant Savona intended to prevent Plaintiff from faxing motions to Defendant Thomas-Morgan is not an improper or ulterior motive. In fact, the criminal complaint was filed to pursue criminal charges because Plaintiff sent a fax to Defendant Thomas-Morgan, which based on the facts as alleged by Plaintiff, Defendant Savona reasonably believed was a violation of the civil injunction.[3] It is not improper that, by filing the criminal complaint, Defendants intended to prevent Plaintiff from sending future faxes to Defendant Thomas-Morgan. The facts alleged by Plaintiff fail to state an improper or ulterior purpose and, as a result, Plaintiff has failed to state a claim for abuse of process.

Accordingly, Plaintiff count three of Plaintiff's Amended Complaint is dismissed.

---

[3] The Injunction Against Harassment States, "WARNINGS TO DEFENDANT: This Injunction shall be enforced, even without registration, by the courts of any state." (Doc 48-1). *See* Arizona Revised Statutes section 13-3602(M) ("Criminal violations of an order issued pursuant to this section shall be referred to an appropriate law enforcement agency. The law enforcement agency shall request that a prosecutorial agency file the appropriate charges. A violation of an order of protection shall not be adjudicated by a municipal or justice court unless a complaint has been filed.")

### C.    Intentional Infliction of Emotional Distress under State Law (Count Eleven)

In count eleven, Plaintiff alleges that the actions of Defendants Savona, Murray, Thomas-Morgan, Moore, and Keller, were extreme, outrageous, intentional, reckless, and "intended to harm – and did harm – Plaintiff." (Doc. 38 at 32). Plaintiff argues that "it is self-evident that it is extreme and outrageous conduct when a Prosecutor, with malice and aforethought, arbitrarily and capriciously prosecutes someone whom he knows did not commit a crime." (Doc. 54 at 18).

In Arizona a party is liable for intentional infliction of emotional distress when, that party, "by extreme and outrageous conduct, intentionally or recklessly causes severe emotional distress to another." *Godbehere v. Phoenix Newspapers, Inc.*, 783 P.2d 781, 785 (Ariz. 1989). "Extreme and outrageous conduct requires that plaintiff prove defendant's conduct exceeded all bounds usually tolerated by decent society . . . and [caused] mental distress of a very serious kind." *Id.* (internal citations omitted).

Because the Court has determined above that, based on the facts as alleged by Plaintiff, Defendant Savona did have probable cause to file the criminal complaint against Plaintiff, Plaintiff's allegation that Defendant Savona acted "with malice and aforethought" fails to state a claim for intentional infliction of emotional distress. (Doc. 54 at 18). In regards to the other named defendants for this claim, the facts alleged by Plaintiff do not support Plaintiff's claim that Defendants actions were "extreme and outrageous." The facts alleged by Plaintiff fail to state a claim for intentional infliction of emotional distress against Defendants Savona, Murray, Thomas-Morgan, Moore, and Keller.[4]

---

[4] Even if the Court were to accept Plaintiff's legal conclusion that Defendant Savona lacked probable cause as true, Plaintiff has still failed to state a claim upon which relief can be granted for intentional infliction of emotional distress. The conduct that Plaintiff alleges is not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Ford v. Revlon, Inc.*, 734 P.2d 580, 585 (Ariz.

1    Accordingly, Plaintiff has failed to state a claim upon which relief can be granted
2    and count eleven for intentional infliction of emotional distress is dismissed.

3    **D.    False Light Invasion of Privacy under State Law (Count Twelve)**

4    In count twelve, Plaintiff alleges that Defendants Savona, Murray, Thomas-
5    Morgan, Moore, and Keller, made statements that they "knew (or reasonably should have
6    known)" were "untrue and intended to misrepresent Plaintiff's character, history,
7    activities, and beliefs" and these "false and/or misleading statements were made public
8    by way of court record." (Doc. 38 at 32). Specifically, Plaintiff argues that the criminal
9    complaint which "falsely charged [him] as a criminal" was "publicized" and represented
10   Plaintiff "in a false light that a reasonable person would find highly offensive." (Doc. 54
11   at 19-20).[5]

12   Under Arizona law, the claim of false light invasion of privacy is intended to
13   protect against the conduct of knowingly or recklessly publishing false information or
14   innuendo that a "reasonable person" would find "highly offensive." *Godbehere*, 783 P.2d
15   at 786. To recover for false light invasion of privacy, a plaintiff must allege facts showing
16   the defendant published information with knowledge of the falsity or with reckless
17   disregard for the truth. *Id*. "The Arizona Supreme Court has made clear, however, that the
18   standards for proving false light invasion of privacy are quite stringent by themselves and
19   that the tort protects against a narrow class of wrongful conduct that falls just short of
20   outrage." *Lemon v. Harlem Globetrotters Intern., Inc.*, 437 F.Supp.2d 1089, 1108 (D.
21   Ariz. 2006). The publication "must involve a major misrepresentation of [the plaintiff's]
22   character, history, activities, or beliefs, not merely minor or unimportant inaccuracies."
23   *Id.* at 787.

24   Plaintiff's argument that Defendants acted "with knowledge of the falsity or with
25   1987) (internal citation omitted).

26   [5] Plaintiff offers no allegations as to how Defendants Savona, Murray, Thomas-
27   Morgan, Moore, and Keller each made false statements in the criminal complaint that
28   was filed against him.

reckless disregard for the truth" in the course of filing and pursuing the criminal complaint is entirely based on Plaintiff's argument that Defendant Savona lacked probable cause. As a result, because the Court has found there was probable cause based on Plaintiff's allegations, this argument is precluded. *Id.* at 786.

Further, Plaintiff's argument that he is placed in a "false light" because the criminal complaint creates a public court record that represents him as a "criminal" does not support a claim for false light invasion of privacy. Arizona favors an "open government and informed citizenry" and "records in all courts . . . are presumed to be open to any member of the public." Ariz. R. Sup. Ct. 123(c)(1). Other than documents listed in Arizona Rule of Superior Court 123(d)(2)(A), adult criminal case files are open to the public unless otherwise prohibited by law or sealed by court order. Ariz. R. Sup. Ct. 123(d)(2)(C). Despite Plaintiff's arguments to the contrary, official court records open to public inspection cannot support an action for invasion of privacy. *See* Restatement (Second) of Torts § 652D, cmt. d (1977).[6] Because the criminal complaint in this case is considered a public record and is open to public inspection, Plaintiff has failed to state a claim upon which relief can be granted and count twelve of false light invasion of privacy is dismissed.

### E.   Negligent Supervision under State Law (Count Thirteen)

In count thirteen, Plaintiff alleges that the City of Prescott is liable on a theory of

---

[6] *See also Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 495 (1975) ("States may not impose sanctions on the publication of truthful information contained in official court records open to public inspection."); *Baker v. Burlington Northern, Inc.*, 587 P.2d 829, 822-23 (denying false light claim when publication was an accurate recitation of public court records); *Coverstone v. Davies*, 239 P.2d 876, 880 (Cal. 1952) ("The facts concerning the arrest and prosecution of those charged with violation of the law are matters of general public interest. Therefore the publication of details of such official actions cannot, in the absence of defamatory statements, be actionable."); *Hubbard v. Journal Pub. Co.*, 368 P.2d 147, 148 (N.M. 1962) ("the right to privacy is not invaded by any publication made in a court of justice") (quoting Samuel D. Warren & Louis D. Brandeis, *The Right to Privacy*, 4 Harv. L. Rev. 193 (1890)).

1   negligent supervision. (Doc. 38 at 32-33). Plaintiff argues that the City of Prescott has no
2   "oversight protocol" of Defendants Savona, Murray, and Keller, and, as a result, the City
3   of Prescott is liable for the actions of Defendants Savona, Murray, and Keller. (Doc. 54 at
4   20).

5       In order to state a claim of negligent supervision under state law, a plaintiff must
6   allege that (1) the employer knew or should have known that (2) an employee was not
7   competent to perform his or her job duties and (3) the employer's failure to supervise that
8   employee caused injury to the plaintiff. *Humana Hosp. Desert Valley v. Superior Court*
9   *of Arizona In and For Maricopa County*, 742 P.2d 1382 (Ariz. App. 1987). Additionally,
10  in order for an employer to be held liable for negligent supervision, a court must first find
11  that an employee actually committed a tort. *Kuhen v. Stanley*, 91 P.3d 346 (Ariz. App.
12  2004).

13      Plaintiff has failed to state a tort claim against any employee of the City of
14  Prescott. Because Plaintiff has failed to state a claim for a tort action against any of the
15  City of Prescott's employees in their individual capacity, Plaintiff has failed to state a
16  claim for negligent supervision against the City of Prescott.

17      Accordingly, count thirteen of negligent supervision under state law is dismissed.

18      **F.      42 U.S.C. § 1983 Claims**

19      Plaintiff has alleged five claims pursuant to 42 U.S.C. § 1983 claims against
20  certain Defendants. Section 1983 is not a source of substantive rights on its own. *Graham*
21  *v. Connor*, 490 U.S. 386, 393 (1989). Section 1983 provides a cause of action against
22  persons acting under color of state law who have violated rights guaranteed by the United
23  States Constitution and federal law. 42 U.S.C. § 1983. To state a claim under § 1983, a
24  plaintiff must allege that: (1) the conduct about which he complains was committed by a
25  person acting under the color of state law, and (2) the conduct deprived him of a federal
26  constitutional or statutory right. *Wood v. Ostrander*, 879 F.2d 583, 587 (9th Cir. 1989). A
27  plaintiff must also allege that he suffered a specific injury as a result of the conduct of a

28

particular defendant and he must allege an affirmative link between that injury and the conduct of the defendant. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

### 1.       Second Amendment (Count Eight)

In count eight, Plaintiff alleges that Defendant Savona is liable for a violation of Plaintiff's Second Amendment rights. Plaintiff argues that his Second Amendment rights were violated when Judge Markham set a temporary release condition that prohibited Plaintiff from possessing any deadly weapons during the pendency of the criminal case. (Doc. 38 at 22, Doc 48-1 at 13).  Plaintiff further argues that Defendant Savona is liable for a violation of Plaintiff's Second Amendment rights because he opposed Plaintiff's motion to modify the release conditions.

Taking the facts alleged by Plaintiff as true for purposes of the motion to dismiss, Plaintiff has failed to state a claim for a violation of his Second Amendment rights. Plaintiff alleges his Second Amendment rights were violated by the release conditions as set by Judge Markham. Plaintiff has not named Judge Markham as a defendant in this case and, as a result, cannot state a claim against him. Moreover, any amendment to name Judge Markham as a defendant would be futile because Judge Markham is entitled to absolute judicial immunity to all actions taken in his judicial capacity. *See Forrester v. White*, 484 U.S. 219 (1988); *Mireles v. Waco*, 502 U.S. 9 (1991); *Cleavinger v. Saxner*, 474 U.S. 193 (1985); *Stump v. Sparkman*, 435 U.S. 349 (1978); *Pierson v. Ray*, 386 U.S. 547 (1967).

Plaintiff attempts to argue that Defendant Savona's motion practice equates to Judge Markham's order. (Doc. 38 at 22). Parties' arguments and motions are not an order of the court and Defendant Savona is not the appropriate defendant. Further, even if Defendant Savona were the appropriately-named state actor, Plaintiff cannot state a claim against him because prosecutors are entitled to prosecutorial immunity "when performing the traditional functions of an advocate." *Genzler v. Longanbach*, 410 F.3d 630, 636 (9th Cir. 2005) ("A prosecutor is protected by absolute immunity from liability for damages

1    under § 1983 'when performing the traditional functions of an advocate' [citation

2    omitted].").

3         Based on the foregoing, Plaintiff has failed to state a claim against Judge

4    Markham or Defendant Savona arising from Judge Markham's order. Accordingly, count

5    eight is dismissed.

6                      **2.    Fourth Amendment (Count Two)**

7         In count two, Plaintiff alleges that Defendants Savona, Murray, Keller, Thomas-

8    Morgan, and Moore violated his Fourth Amendment rights. Plaintiff alleges that

9    Defendants caused Plaintiff to be "unreasonabl[y] seized initially and continuously for

10   more than five months" by filing the criminal complaint and "causing to be issued" a

11   "[c]ourt [s]ummons against Plaintiff ordering Plaintiff to stop and appear on certain days

12   before the Prescott court under threat of conventional arrest." (Doc 38 at 26).[7]

13        In the Motion to Dismiss, the Prescott Defendants argue that Plaintiff has failed to

14   allege that Plaintiff was "seized" under the Fourth Amendment. The Prescott Defendants

15   specifically argue that "an appearance on a mere summons, subject to *de minimus* release

16   restrictions, is not an unreasonable seizure." (Doc. 55 at 5).

17        To state a claim for a Fourth Amendment violation a party must allege first that

18   the challenged conduct constitutes a search or seizure. *United States v. Attson*, 900 F.2d

19   1427, 1429-30 (9th Cir. 1990). A person is seized under the Fourth Amendment when

20   "by means of physical force or show of authority," his freedom of movement is

21   terminated or restrained. *Brenlin v. California*, 551 U.S. 249, 254 (2007). The Ninth

22   Circuit Court of Appeals has held that a person is not seized under the Fourth

23   ────────────────────

24   [7] Plaintiff also incorporates his previous argument that Defendant Savona lacked
     probable cause to file the criminal complaint and, as a result "the seizure was

25   unreasonable" under the Fourth Amendment. (Doc. 54 at 6). However, because the Court
     has determined above that probable cause did exist to file the complaint based on the

26   facts alleged by Plaintiff, this argument fails to state a claim for a Fourth Amendment

27   violation.

28

Amendment when they are required, by the conditions of a pretrial release, to "obtain permission of the court before leaving the state and [to] make court appearances." *Karam v. City of Burbank*, 352 F.3d 1188, 1193 (9th Cir. 2003). The court in *Karam* also noted that,

> Cases decided by our sister circuits in which they have concluded there was a seizure incident to pre-trial release have involved conditions significantly more restrictive than those in the present case. *See, e.g. Johnson v. City of Cincinnati*, 310 F.3d 484, 493 (6th Cir. 2002) ("[I]n each of the cases addressed by our sister circuits, the government not only curtailed the suspect's right to interstate travel, it also imposed additional restrictions. . . , such as obligations to post bond, attend court hearings, and contact pretrial services.").

*Karam*, 352 F.3d at 1193.

According to the facts alleged by Plaintiff, the conditions imposed by the summons required "Plaintiff to stop and appear on certain days before the Prescott court under threat of conventional arrest." (Doc. 38 at 26). Plaintiff states that the conditions did not expressly restrict him from leaving the state. (Doc. 54 at 7). As a result, according to the facts alleged by Plaintiff, Plaintiff was not seized for purposes of the Fourth Amendment. Because Plaintiff was never "seized" as contemplated by the Fourth Amendment, Plaintiff has failed to state a claim for a Fourth Amendment violation.

Accordingly, count two of violations under the Fourth Amendment is dismissed.

### 3.    Fifth Amendment (Count Four)

Plaintiff concedes in his First Amended Response to Defendant's Motion to Dismiss that this count should be dismissed. (Doc. 54 at 7) ("Plaintiff withdraws this Count as it seems redundant and best covered in Count Five.").

Accordingly, count five is dismissed.

### 4.    Fourteenth Amendment Malicious Prosecution Claim (Counts Five and Seven)

Plaintiff alleges § 1983 claims against Defendants Murray, Savona, Keller,

Thomas-Morgan, and Moore based on malicious prosecution under the Fourteenth Amendment in both counts five and seven. Because these claims appear to be based on the same legal argument, the Court will consider these two counts together. Plaintiff's argument on claims is based on his previous argument in count one that Defendant Savona lacked probable cause to file the criminal complaint.

In order to state a claim of malicious prosecution under § 1983, a plaintiff must allege that the defendants prosecuted plaintiff "with malice **and without probable cause**, and that they did so for the purpose of denying [plaintiff] equal protection or another specific constitutional right." *Freeman v. City of Santa Ana*, 68 F.3d 1180 (9th Cir. 1995) (emphasis added). As determined above in count one, Plaintiff has failed to allege facts that, if accepted as true, state a claim for malicious prosecution because Plaintiff has failed to plausibly allege lack of probable cause.

Accordingly, counts five and seven are dismissed.

### 5.      Fourteenth Amendment *Brady* Claim (Count Six)

In count six, Plaintiff alleges that Defendants Murray and Savona deprived Plaintiff of his Fourteenth Amendment right as stated in *Brady v. Maryland* because Defendants "[withheld] exculpatory evidence." (Doc. 38 at 28). According to Plaintiff, the "exculpatory evidence" is the police report written by Defendant Murray that the Court discussed above when analyzing count one of Plaintiff's Amended Complaint. (*Id.*).

In response, the Prescott Defendants argue that Plaintiff cannot state a § 1983 *Brady* claim because there was no trial, Plaintiff was not found guilty, and the charges were ultimately dismissed. (Doc. 48 at 14). The Prescott Defendants also argue that the alleged exculpatory evidence, the police report, "was neither exculpatory nor material and therefore does not support a *Brady* claim." (*Id.* at 15).

Under *Brady v. Maryland*, 373 U.S. 83 (1963), the government has a constitutional duty to disclose material exculpatory evidence to a criminal defendant

before trial. Exculpatory evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682-84 (1985). "A successful *Brady* claim requires three findings: (1) the evidence at issue is favorable, either because it is exculpatory or because it is impeaching; (2) such evidence was suppressed by the prosecution, either willfully or inadvertently; and (3) prejudice resulted." *Atwood v. Schriro*, 489 F. Supp. 2d 982, 1013 (D. Ariz. 2007) (citing *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)).

The third requirement of "prejudice" is an essential element to a *Brady* claim. *Buckheit v. Dennis*, No. 3:09-cv-05000-JCS, 2013 WL 57716, at *10 (N.D. Cal. Jan. 3 2013). The court in *Buckheit* considered the third requirement of a *Brady* claim in a case where, similar to the present case, the plaintiff was not convicted. The *Buckheit* court's thorough analysis and discussion applies to the facts in the present case:

> Plaintiff was never convicted, nor was he ever charged by the County. Although the Ninth Circuit has not explicitly held that a conviction is a prerequisite for a *Brady* claim, *see Smith v. Almada*, 640 F.3d 931 (9th Cir. 2011), three circuit courts have. *See Morgan v. Gertz*, 166 F.3d 1307, 1310 (10th Cir. 1999) ("Regardless of any misconduct by government agents before or during trial, a defendant who is acquitted cannot be said to have been deprived of the right to a fair trial."); *Flores v. Satz*, 137 F.3d 1275, 1278 (11th Cir. 1998) ("Plaintiff was never convicted and, therefore, did not suffer the effects of an unfair trial. As such, the facts of this case do not implicate the protections of *Brady*."); *McCune v. City of Grand Rapids*, 842 F.2d 903, 907 (6th Cir. 1988) (holding that "[b]ecause the underlying criminal proceeding terminated in appellant's favor, he has not been injured by the act of wrongful suppression of exculpatory evidence" and thus cannot maintain *Brady*-based § 1983 claim). In *Smith v. Almada*, the Ninth Circuit declined to decide whether a § 1983 plaintiff was barred from asserting a *Brady* claim after he spent five months in jail but was ultimately acquitted at a second trial. *See Almada*, 640 F.3d at 941-42.

2013 WL 57716 at *10. Unlike *Buckheit*, where the plaintiff was found factually innocent, in the present case the criminal complaint against Plaintiff was dismissed. However, this distinction does not change the reasoning used by the *Buckheit* court. Assuming, for purposes of this order, that the police report is considered *Brady* material, Plaintiff cannot state a claim under *Brady* because he has not, and cannot, allege facts that would show he was prejudiced by any alleged withholding of exculpatory evidence.

Moreover, "[*Brady* does not] impose[ ] a general requirement of pretrial disclosure of exculpatory material. Due process, it is said, requires only that disclosure of exculpatory material be made in sufficient time to permit defendant to make effective use of that material." *LaMere v. Risley*, 827 F.2d 622, 625 (9th Cir. 1987) (alterations in original) (internal citation omitted); *see United States v. Dupuy*, 760 F.2d 1492, 1501 (9th Cir. 1985) (holding that disclosing *Brady* material a week after trial began was permissible where the defendant "had ample opportunity to take advantage of the information provided"). Here, even if the police report were *Brady* material, Plaintiff has suffered no prejudice from Defendants' alleged failure to disclose the police report to him prior to the dismissal of the case. Plaintiff has not alleged how he was deprived of effectively using the police report prior to the dismissal. Accordingly, Plaintiff has failed to state a claim upon which relief can be granted based on a *Brady* violation.

Accordingly, count six of Plaintiff's § 1983 *Brady* claim is dismissed.

### K.    Conspiracy and "Neglect to Prevent" under 42 U.S.C. §§ 1985(3) & 1986 (Counts Nine and Ten)

Plaintiff concedes that counts nine and ten are related and the failure to state a claim under § 1985(3) also results in dismissal of Plaintiff's § 1986 claim. (Doc. 54 at 17) ("Plaintiff agrees that Counts 9 & 10 are related, and if the first fails, so does the second."). Accordingly, the Court will first consider Plaintiff's § 1985(3) claim. Plaintiff generally alleges that Defendants "conspired against [Plaintiff]" in an effort to "civilly prosecute [Plaintiff]."

Four elements are required to state a cause of action under § 1985(3). *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992). A plaintiff must allege: "(1) a conspiracy; (2) for the purposes of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Id.* To state a claim for conspiracy, a party must allege specific facts that state "overt acts done in furtherance of the conspiracy." *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1039 (9th Cir. 1990). Conclusory statements, alone, unsupported by "specific acts showing an agreement or meeting of the minds to deprive plaintiffs of their constitutional rights" are insufficient to state a claim under § 1985(3). *Comm. for Immigrant Rights of Sonoma Cnty. v. Cnty. Of Sonoma*, 644 F. Supp. 2d 1177, 1203 (N.D. Cal. 2009).

Plaintiff generally alleges that Defendants Savona, Murray, Thomas-Morgan, Moore, and Keller communicated with one another on various occasions and discussed the complaint against Plaintiff. Plaintiff alleges no specific facts to support the conclusory allegation that Defendants were acting in conspiracy to deprive Plaintiff of his constitutional rights. Further, even assuming, arguendo, that Plaintiff has alleged enough facts to state a conspiracy, Plaintiff still fails to state a claim upon which relief can be granted for conspiracy because as discussed above Plaintiff has failed to state a claim for a violation of any of Plaintiff's constitutional rights.

Accordingly, Plaintiff counts nine and ten are dismissed.

## IV.   THE REMAINING DEFENDANTS

On October 29, 2010, Plaintiff filed his original complaint in this case against Defendant Savona and "Jane Doe" Savona, husband and wife. (Doc. 1). Plaintiff did not timely return the service packets for the Marshals to serve Defendant Savona with the Complaint and the Court set a show cause hearing requiring Plaintiff to appear and show

cause why the case should not be dismissed for failure to prosecute and failure to comply with the Court's Orders.  (Doc. 9).  When Plaintiff did not appear for the show cause hearing, the Court dismissed the case without prejudice.  The Court of Appeals reversed this Court's decision on the basis that the Court did not show its work in analyzing the factors that are to "guide" the court's decision as to whether to dismiss for failure to prosecute.  (Doc. 18-2).  In its Order, the Court of Appeals did not address the fact that Plaintiff failed to comply with two Orders of the Court, which is an independent basis for dismissal.  (*See id.*).  The Court of Appeals likewise did not address the fact that Plaintiff never made a showing of good cause for his failure to return the service packets within the time set by the Court's Order.[8]  (*See id.*).

     After the case was remanded, on November 21, 2012, Plaintiff filed what he titled his "Zeroth Amended Complaint," naming the following Defendants: Glenn A. Savona and Jane Doe Savona, husband and wife, Dan Murray and Jane Doe Murray, husband and wife, Christine Keller and Joseph Keller, wife and husband, Melody Thomas-Morgan, and Mark M. Moore and Jane Doe Moore, husband and wife.  (Doc. 20). Plaintiff filed Proofs of Service of the "Zeroth Amended Complaint" with the Court for the following Defendants: Dan Murray, Jane Doe Murray, the City of Prescott, Christine Keller, John Doe Keller, Glenn Savona, Jane Doe Savona.  On January 2, 2013, Plaintiff filed a First Amended Complaint, naming the same Defendants as he named in his "Zeroth Amended Complaint."  (Doc. 38).  There is no evidence in the Record that Plaintiff has ever served Defendants Melody Thomas-Morgan and/or Mark M. Moore and Jane Doe Moore with any of his complaints.

---

     [8]  *Accord* Federal Rule of Civil Procedure 4(m) ("If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to plaintiff—**must** dismiss the action without prejudice against that defendant . . . . But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.") (emphasis added).

1    Plaintiff failed to serve Melody Thomas-Morgan and Mark M. Moore and Jane

2  Doe Moore within the time set in this Court's Order of October 24, 2012 (requiring

3  service within 30 days).  (Doc. 19).  Moreover, Plaintiff failed to serve Melody Thomas-

4  Morgan and Mark M. Moore and Jane Doe Moore within 120 days of the filing of either

5  the "Zeroth Amended Complaint" or the First Amended Complaint as required by

6  Federal Rule of Civil Procedure 4(m).  Based on Plaintiff's prior experience in this very

7  case, Plaintiff should be well-aware of the rule that he must timely serve Defendants.

8  However, the Court of Appeal's opinion may have given Plaintiff the impression that he

9  is not required to diligently prosecute his case.  Accordingly, the Court will not, at this

10  time, dismiss this case for failure to serve as required by Federal Rule of Civil Procedure

11  4(m) or failure to prosecute under Federal Rule of Civil Procedure 41(b), both of which

12  are implicated by Plaintiff's lack of diligence.

13    The Court nonetheless finds dismissal as to Defendants Melody Thomas-Morgan,

14  Mark M. Moore and Jane Doe Moore appropriate because dismissal against non-moving

15  Defendants is appropriate, where, as here, the non-responding Defendants are in a

16  position similar to the moving Defendants.  *See Abagninin v. AMVAC Chem. Corp.*, 545

17  F.3d 733, 743 (9th Cir. 2008) ("A [d]istrict [c]ourt may properly on its own motion

18  dismiss an action as to defendants who have not moved to dismiss where such defendants

19  are in a position similar to that of moving defendants.") (internal citations omitted). The

20  only well-pled allegations against Defendants Melody Thomas-Morgan, Mark M. Moore

21  and Jane Doe Moore fail to state a claim upon which relief can be granted pursuant to

22  Federal Rule of Civil Procedure 12(b)(6) as discussed at length herein.  Accordingly, all

23  claims against Melody Thomas-Morgan, Mark M. Moore and Jane Doe Moore are

24  dismissed.

25    **V.    CONCLUSION**

26    Based on the foregoing,

27    **IT IS ORDERED** that Defendants Glenn Savona, Dan Murray, Christine Keller,

28

- 28 -

and the City of Prescott's ("Prescott Defendants") Motion to Dismiss (Doc. 48) is granted.

　　　　**IT IS FURTHER ORDERED** that this case is dismissed with prejudice as to all Defendants.

　　　　The Clerk of the Court shall enter judgment for Defendants accordingly.

　　　　Dated this 21st day of August, 2013.

                                              James A. Teilborg
                                              Senior United States District Judge